**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

HUNTINGTON INGALLS INCORPORATED,

Petitioner,

v.

Civil Case No. 18-469

THE MINISTRY OF DEFENSE OF THE
BOLIVARIAN REPUBLIC OF VENEZUELA,

Respondent.

## PETITION TO CONFIRM, OR ALTERNATIVELY, TO RECOGNIZE AND ENFORCE ARBITRAL AWARD

Petitioner Huntington Ingalls Incorporated ("Petitioner" or "Ingalls"), a wholly-owned subsidiary of Huntington Ingalls Industries, Inc., by and through the undersigned counsel, hereby petitions this Court for an Order: (i) confirming, or in the alternative, recognizing and enforcing the final award (the "Award"),[1] which was rendered by an arbitral tribunal on February 19, 2018, in an *ad hoc* arbitration ("Arbitration") between Petitioner and Respondent The Ministry of Defense of the Bolivarian Republic of Venezuela ("Respondent" or the "Ministry"); and (ii) awarding Petitioner such other and further relief as the Court deems just and proper. In support of this Petition, Petitioner alleges as follows:

---

[1] A copy of the Award is attached as Exhibit 1 to the Declaration of John F. Wood filed concurrently with and in support of this Petition.

## Parties, Jurisdiction, and Venue

1.      Petitioner Ingalls is a corporation organized and existing under the laws of Virginia.

2.      Respondent the Ministry is an department, division, or ministry of the Bolivarian Republic of Venezuela, a foreign state within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d), and 1602–1611.

3.      This Court has original jurisdiction over this proceeding under 28 U.S.C. § 1330(a) and the Federal Arbitration Act ("FAA"), specifically 9 U.S.C. §§ 203 and 302, in that the subject matter of this proceeding relates to an arbitration award falling under the Inter-American Convention on International Arbitration, Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245 (the "Panama Convention"), which is incorporated into the FAA, *see* 9 U.S.C. §§ 301–307.  Because this proceeding is an action to confirm an arbitral award, under 28 U.S.C. § 1605(a)(6), Respondent is not exempt from the Court's jurisdiction on sovereign immunity grounds.

4.      This Court has personal jurisdiction over Respondent pursuant to 28 U.S.C. §§ 1330(b) and 1608.  Furthermore, venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

## Summary of the Underlying Dispute

5.      The Award resolved a dispute that has been ongoing for more than 15 years.  The dispute arose from a contract between Ingalls Shipbuilding, Inc. and the Ministry to refurbish two LUPO-class missile-armed frigates in the Venezuelan Navy (the "Contract").  Petitioner is ultimately a successor in interest to Ingalls Shipbuilding, Inc. (Wood Decl. ¶ 4.) The Contract

2

was executed on December 17, 1997.  The Contract's value was $315 million.  (Wood Decl., Ex. 3.)

6.     The main purpose of the Contract was the maintenance and refurbishment of the frigates according to detailed technical specifications—with Ingalls redelivering fully operational frigates conforming to the specifications.  The Contract included a final clause ("Clause 59") that provided for compensation for additional "absolutely necessary" work beyond the Contract's $315 million value.  (*Id.*)

7.     As set forth in the Award, during the course of refurbishing the frigates, Ingalls provided additional out-of-scope work for which it was entitled to compensation under Clause 59.  Moreover, the Ministry was responsible for delay on the project, which, according to the Award, further damaged Ingalls.  (Wood Decl., Ex. 1.)

## The Arbitration Clause

8.     Clause 42 of the Contract provided in part:

> Should a dispute or breach or interpretation issue arise in connection with this Contract, "THE CONTRACTOR" and "THE MINISTRY" shall get together and negotiate in good faith to resolve the matter in a friendly manner.  Should the parties fail to resolve the matter within thirty (30) days of the emergence of the dispute, then at the request of either party the matter shall be submitted for arbitration according to this Clause.  Should the matter still not be resolved through arbitration, the parties shall be entitled to resort to the competent Courts of the Republic of Venezuela.[2]

Clause 42 further provided that "[a]ny arbitration under this Contract shall take place in Caracas, Venezuela.  The parties agree that in the case of arbitration, they will abide by the rules contained in the Civil Procedure Code of Venezuela."  (Wood Decl., Ex. 3.)

---

[2] The Contract's official language was Spanish.  (Wood Decl., Ex. 2.)  English quotations from the Contract come from a certified translation of the Contract used in the Arbitration, attached as Exhibit 3 to the Declaration of John Wood.

## Procedural History

9.      Following failed attempts at resolving the dispute amicably, on April 5, 2002,

Ingalls sent the Ministry a demand for arbitration pursuant to the Contract. (Wood Decl., Ex. 4.)

The Ministry refused to arbitrate.

10.     In October 2002, Ingalls filed a suit in the United States District Court for the

Southern District of Mississippi seeking an order to compel the Ministry to arbitrate. *Northrop*

*Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela,* No. 1:02-CV-785

(S.D. Miss. Oct. 24, 2002).[3]   In April 2003, the district court granted Ingalls' motion to compel

arbitration. (Wood Decl., Ex. 5.) The Ministry refused to participate, and pursuant to the court's

April 2003 Order, the court appointed an arbitrator for the Ministry. (*Id.*) The initial arbitral

tribunal, once established, invited the Ministry to participate in the arbitration and instructed

Ingalls to provide the Ministry with copies of all papers. The chair of the tribunal resided in

Mexico City, and the arbitration was moved to Mexico City to facilitate travel from both the

United States and Venezuela.

11.     In January 2004, the Ministry filed a motion in the Southern District of

Mississippi to vacate the arbitration order and dismiss Ingalls' complaint. The district court

stayed the arbitration while it considered the Ministry's motion. (Wood Decl., Ex. 6.)

12.     In September 2005, the Mississippi lawyer for the Ministry transmitted to Ingalls

a cash settlement offer, which was accepted. However, the Ministry later filed papers arguing

that the settlement agreement was incomplete and, later, unauthorized. In September 2007, the

district court upheld the validity of the settlement agreement. *Northrop Grumman Ship Sys., Inc.*

---

[3] Northrop Grumman Ship Systems, Inc., the plaintiff in the Mississippi proceedings, was a successor in interest to Ingalls Shipbuilding, Inc. and a predecessor in interest to Petitioner. (Wood Decl. ¶ 9.)

4

*v. Ministry of Def. of the Republic of Venezuela*, No. 1:02-CV-785,  2007  WL 2783343  (S.D.

Miss. Sept. 24, 2007).   The Ministry  appealed to the United States Court of Appeals for the Fifth

Circuit.

13.     In November 2008,  the arbitration  tribunal  announced to the parties that it was

terminating  the still-stayed  arbitration,  pursuant to Article 31, Paragraph 2 of the *Inter-American*

*Commercial Arbitration Commission Rules*, because the proceeding  had been suspended for

more than three years and eight months,  and the lifting  of the suspension was "not foreseen in the

near future." (Wood Decl., Ex. 7.)

14.     In July 2009,  the Court of Appeals vacated the judgment  enforcing the settlement

agreement on the ground  that government  authorization  for counsel's settlement  had not been in

writing.   The Court of Appeals also ruled that the arbitration's  termination  mooted the original

arbitration  order, and, accordingly,  remanded the matter to the district  court for fresh

consideration  of the issue regarding where the arbitration  should take place. *Northrop Grumman*

*Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela*, 575 F.3d 491 (5th Cir. 2009).

15.     On remand, the two sides filed motions to compel arbitration in their desired fora,

and the Ministry  also moved to dismiss  based on the Contract's litigation-forum  clause.  As

support for its motion to compel arbitration  in Mississippi,  Ingalls  raised the change in

diplomatic  relations  between the United States and Venezuela in the time since the Contract was

executed, and the impracticability  of arbitration  in Caracas.  Ingalls argued and provided

evidence demonstrating  that the legal system in Venezuela following  the Bolivarian  Revolution

had deteriorated  since the Contract was executed such that any attempt to litigate  against the

Venezuelan government  in Venezuela would  not result in a fair outcome.  (Northrop's Mem. in

Resp. to Venezuela's Mot. to Compel Arbitration  in Venezuela and Dismiss,  and in Supp. of

Northrop's Cross-Mot. to Compel Arbitration in this District and Retain Jurisdiction at 8-10, *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela*, No. 1:02-CV-785 (S.D. Miss. Dec. 7, 2009), ECF No. 161; Wood Decl., Ex. 8.)  Ingalls also informed the district court that, in August 2006, the United States had issued regulations revoking all licenses for the export of military articles and technology to Venezuela and banning new export licenses. This action barred Ingalls from taking or sending licensed technical documents, including legal papers containing licensed technical information, to an arbitration conducted in Caracas even where the Ministry had already received the same licensed information as part of contract performance or in the course of the original arbitration.  (*Id*. at 11-12.)

16.     The district court held that the contractual forum selection clause should not be enforced.  Rather, the court concluded that although the parties had agreed that disputes arising out of the contract would be arbitrated in Caracas, "circumstances and diplomatic relations have changed considerably since the contract was formulated."  *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela,* No. 1:02-CV-785, 2010 WL 5058645, at *4 (S.D. Miss. Dec. 4, 2010).  Moreover, the district court found that the circumstances in Venezuela were "unforeseeable to [Ingalls] at the time the contract was negotiated."  (*Id.)*  The court therefore found that "enforcing the Caracas forum selection clause will for all practical purposes deprive [Ingalls] of its day in court."  (*Id.)*  The court also rejected Ingalls' request for an order to arbitrate in the Southern District of Mississippi, and instead gave the parties a deadline to agree on an alternative forum for the place of the arbitration, failing which the court would make the selection of an alternative place of arbitration.  The Ministry's attempt to appeal the decision was dismissed for lack of jurisdiction by the Fifth Circuit on March 23, 2011.  (Order, *Northrop*

6

*Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela*, No. 11-60001 (5th Cir.

Mar. 23, 2011) (granting appellee's motion to dismiss appeal); Wood Decl., Ex. 9.)

17.    On March 30, 2011, the parties reported to the district court that they had agreed

that Washington, D.C. would be the place of arbitration.  (Minute Entry, *Northrop Grumman*

*Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela*, No. 1:02-CV-785 (S.D. Miss.

Mar. 30, 2011), Wood Decl. Ex. 10.)

18.    The parties each selected an arbitrator, and a new tribunal (the "Tribunal") was

constituted in accordance with the Contract.  The ministry raised multiple preliminary procedural

challenges with the Tribunal.  Among the challenges raised by the Ministry were (a) an objection

to the jurisdiction of the Tribunal, and (b) an objection to the place of arbitration.  With respect

to jurisdiction, the Ministry argued that, because the initial Mexico City arbitration did not

resolve the underlying dispute, the parties were compelled to pursue their claims in the

Venezuelan courts.  With respect to the place of arbitration, the Ministry argued that the Contract

allowed only for arbitration in Venezuela.  The Ministry claimed that arbitration outside of

Venezuela would breach article 150 of the Venezuelan Constitution, and that a change in

location of the place of arbitration would require legislative approval.  Although the Ministry had

previously agreed to arbitrate in Washington D.C., the Ministry claimed that it was forced into

that agreement by the district court's threat that it would select the place of arbitration if the

parties were be unable to reach an agreement on this issue.  (*See* Wood Decl., Ex. 11 ¶¶ 27–31,

81.)

19.    On July 16, 2013, in its Procedural Order No. 2, the Tribunal rejected the

Ministry's challenges.  The Tribunal found that it had jurisdiction to hear the dispute.  Although

Clause 42 of the Contract allowed the parties to seek recourse in Venezuelan courts in the event

arbitration failed to resolve a dispute, the Contract did not preclude a second attempt at arbitration. The Tribunal also rejected the argument that the arbitral proceedings could not be held anywhere but Caracas, recognizing that changed circumstances could in some instances lead to a modification of the forum selection clause. The Tribunal rejected the Ministry's contention that holding the arbitration outside of Caracas would violate the Venezuelan Constitution, identifying another International Chamber of Commerce ("ICC") arbitration involving Venezuela which was held outside of Venezuela notwithstanding the purported constitutional prohibition. In addition, the Tribunal noted that Venezuela had affirmatively agreed to Washington, D.C. as the place of the arbitration without raising the constitutional objection. (*Id.* ¶¶ 41–60, 87–95.)

20. The Tribunal found that the parties' conduct before U.S. courts served to amend the Contract's forum selection clause. The Tribunal rejected the Ministry's attempt to re-litigate the question whether the arbitration could be held outside of Venezuela, as that issue had been settled by the Order of the Southern District of Mississippi and was res judicata. However, the Tribunal concluded that it had the authority to choose where the proceedings outside of Venezuela would be conducted. The Tribunal indicated that, to safeguard the neutrality and integrity of the arbitration proceedings, it was appropriate that the arbitration not be held in the country of either of the parties. Instead, the Tribunal selected Rio de Janeiro, Brazil, as the place of the arbitration. (*Id.* ¶¶ 96–97.)

21. As far as the Petitioner is concerned, the Tribunal's decision that Rio de Janeiro would be the place of arbitration did not change the legal seat of the arbitration from Washington, DC, which was the last location to which the parties had agreed. It simply meant that the hearing would be held in Rio de Janeiro, as indeed it was.

70152828_7

### The Award

22.     The arbitration hearing on the merits was held from January 12–18, 2015, in Rio de Janeiro, Brazil.  On February 19, 2018, the Tribunal issued the Award.

23.     As stated in the Award, the Tribunal found, *inter alia*, that:

(i) Ingalls had performed work outside of the scope of the Contract for which it is entitled to compensation of $42,696,937.50;

(ii) delays caused by the Ministry's conduct entitles Ingalls to compensation of $16,755,862.50;

(iii) delays caused by Ingalls conduct entitles the Ministry to compensation of $13,900,000;

(iv) Ingalls is entitled to interest at a rate of 8.713% computed from April 5, 2002, to the date of actual payment of the Award;

(v) the Ministry is entitled to interest at a rate of 8.713% computed from March 10, 2011; and

(vi) Ingalls is entitled to arbitration costs of $672,601.71.  (Wood Decl., Ex. 1.)

The net value of the award, after offsetting sums due the Ministry from sums due to Ingalls and including interest until the date of the award, is $128,862,457.27 in favor of Ingalls.  (Wood Decl. ¶ 15 and Ex. 12.)

### Count I: Confirmation of the Award

***The Panama Convention Governs the Award***

24.     The foregoing paragraphs are incorporated as though restated fully herein.

25.     The Panama Convention is incorporated into the FAA by Section 301 of the FAA, 9 U.S.C. § 301.  Section 302 of the FAA provides that "Sections 202, 203, 204, 205, and 207 of

[the FAA] shall apply to [Chapter 3] as if specifically set forth herein, except that for the

purposes of this chapter 'the Convention," which means the New York Convention in Chapter 2

of the FAA, "shall mean the [Panama] Convention" in Chapter 3 of the FAA.

26.     Therefore, under 9 U.S.C. §§ 202 and 302, "an arbitration agreement or arbitral

award arising out of a legal relationship, whether contractual or not, which is considered as

commercial . . . falls under the [Panama] convention."  9 U.S.C. § 202.  And "[a]s the Second

Circuit has explained, a court will have subject matter jurisdiction under the FAA when '(i)

there is a written agreement; (2) the writing provides for arbitration in the territory of a

signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is

not entirely domestic in scope.'" *Africard Co., Ltd. v. Republic of Niger*, 210 F. Supp. 3d 119,

123 (D.D.C. 2016) (quoting *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d

135, 146 (2d Cir. 2001)).

27.     The Panama Convention plainly applies to this Award.  Venezuela, Brazil, and

the United States are signatories to the Panama Convention and are members of the Organization

of American States.  *See list of signatories at 9 U.S.C.A. § 301.*  Ingalls is a U.S. corporation,

while the Ministry is a component of the Venezuelan government.  The Contract envisioned

work on frigates that were delivered from Venezuela to the United States.  The arbitration and

Award in this case are indisputably international in nature, and the Award's confirmation is

properly governed by the Panama Convention.

### All the Predicates for Confirmation Are Met

28.     This Court has authority to confirm the Award.  Under the FAA, the United States

Court in the district in which the award was made has the authority to confirm an award.  9

U.S.C. § 9.  In March 2011, after the district court in the Southern District of Mississippi held

70152828_7

that the forum selection clause in the Contract was unenforceable, the parties agreed to Washington D.C. as the new seat of arbitration. (Wood Decl., Ex. 10). The best interpretation of the Tribunal's Procedural Order No. 2 is that it moved the hearing to Rio de Janeiro, but did not alter the seat of the arbitration agreed upon by the parties (Washington, DC). Indeed, because the parties had agreed to Washington D.C. as the seat of arbitration, the Tribunal lacked the authority to move the legal seat of arbitration to Rio de Janeiro. Ley de Arbitraje Comercial, art. 9 (1998) (Venez.); U.N. Comm'n on Int'l Trade Law, Arbitration Rules of 1976, art. 16 (1976).

29.     The D.C. Circuit has recognized that the language pertaining to confirmation, recognition, and enforcement of arbitral awards contained in the New York Convention and the Panama Convention is "substantively identical." *TermoRio S.A. E.S.P. v. Electranta, S.P.*, 487 F.3d 928, 933 (D.C. Cir. 2007). Thus, interpretations of these provisions under the rubric of the New York Convention are equally applicable to an arbitration governed by the Panama Convention. *See Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 45 (2d Cir. 1994) ("The legislative history of the [Panama] Convention's implementing statute . . . clearly demonstrates that Congress intended the [Panama] Convention to reach the same results as those reached under the New York Convention" such that "courts in the United States would achieve a general uniformity of results under the two conventions." (quoting H.R. Rep. No. 501, 101st Cong., 2d Sess. 4 (1990))).

30.     Under the FAA, an arbitration award must be confirmed by a court on application of a party, unless one of the grounds for refusal of recognition or enforcement enumerated in the applicable convention exists. *See* 9 U.S.C. § 207; *Argentine Republic v. Nat'l Grid Plc*, 637 F.3d 365, 369 (D.C. Cir. 2011); *Mediso Med. Equip. Developing Servs., Ltd v. Bioscan, Inc.*, 75 F.

Supp. 3d 359, 363 (D.D.C. 2014). Under the Panama Convention, the five primary grounds on

which a court "may" refuse recognition or enforcement are as follows:

> a. That the parties to the agreement were subject to some incapacity under the applicable law or that the agreement is not valid under the law to which the parties have submitted it, or, if such law is not specified, under the law of the State [i.e., country] in which the decision was made; or

> b. That the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense; or

> c. That the decision concerns a dispute not envisaged in the agreement between the parties to submit to arbitration; nevertheless, if the provisions of the decision that refer to issues submitted to arbitration can be separated from those not submitted to arbitration, the former may be recognized and executed; or

> d. That the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties or, in the absence of such agreement, that the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the law of the State where the arbitration took place; or

> e. That the decision is not yet binding on the parties or has been annulled or suspended by a competent authority of the State in which, or according to the law of which, the decision has been made.

Panama Convention, art. 5.1(a)–(e). And recognition and enforcement of an arbitral award may

also be refused on two additional grounds, if the competent authority in the country where

recognition and enforcement is sought finds:

> a. That the subject of the dispute cannot be settled by arbitration under the law of that State; or

> b. That the recognition or execution of the decision would be contrary to the public policy ("ordre public") of that State.

Panama Convention, art. 5.2(a)–(b).

31.     The D.C. Circuit has recognized that judicial review of an international arbitral award is extremely limited.   *See Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *Mitsubishi Motors Corp. v. Soler-Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)) ("Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution' recognized by the Supreme Court as 'appl[ying] with special force in the field of international commerce,' the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards . . . ."); *see also Nat'l Grid*, 637 F.3d at 369 ("Confirmation proceedings under the Convention are summary in nature . . . .").

32.     Furthermore, the burden of proof is on the party who seeks to oppose confirmation.   Panama Convention, art. 5.1; *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007) ("The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses . . . applies").   "[T]he showing required to avoid summary confirmation is high." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011) (citation omitted).   Courts will not second-guess arbitrators' determinations of facts and law, even if incorrect.   (*See id.*) ("[T]his Court 'do[es] not sit to hear claims of factual or legal error by an arbitrator' in the same manner that an appeals court would review the decision of a lower court." (quoting *Teamsters Local Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001)); *LaPrade v. Kidder, Peabody & Co.*, 94 F. Supp. 2d 2, 4 (D.D.C. 2000) ("[A] court must confirm an arbitration award where some colorable support for the award can be gleaned from the record.").

33.     None of the grounds for non-recognition or non-enforcement is present here. Having exercised its rights and obligations under the Contract, the Ministry cannot now claim that the parties were under any incapacity when entering into the Contract or that the Contract

was otherwise invalid.   Nor can the Ministry argue that it was not given proper notice of the initiation of arbitration, as evidenced by its active participation in the proceedings.   Moreover, the Award deals precisely with the issues that were submitted to the Tribunal for arbitration. And, despite the language of the Contract indicating that arbitration would take place in Caracas, Venezuela, the Ministry consented to a modification of that clause, as recognized by both the U.S. courts and the Tribunal.

34.     Further, the subject matter of the Award is capable of settlement by arbitration under all applicable laws.   Nor would enforcement of the Award be contrary to any applicable public policy.   *See, e.g., Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 69 (D.D.C. 2013) ("The public-policy exception under the New York Convention is construed extremely narrowly and applied 'only where enforcement would violate the forum state's most basic notions of morality and justice.'"), *aff'd sub nom. Chevron Corp. v. Ecuador*, 795 F.3d 200 (D.C. Cir. 2015).   Accordingly, the Ministry cannot meet its heavy burden of demonstrating that it has any defense to enforcement of the Award.

35.     The Award issued on February 19, 2018, reflects the opinion of the parties' chosen arbitrators.[4]   It is final and binding.   The Ministry has not made an application to set aside the Award, and there would be no grounds for setting aside the award in any event.

36.     Finally, this Court has confirmed arbitration awards even in the face of pending vacatur proceedings.   *See Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, No. CV 14-2014 (JEB), 2015 WL 7428532, at *16–18 (D.D.C. Nov. 20, 2015) (confirming an award against Venezuela notwithstanding a pending proceeding in France challenging the validity of the award,

---

[4] One of the chosen arbitrators issued a dissent, arguing that Ingalls was entitled to more damages for delay and disruption, that the Ministry's counterclaim should be rejected in its entirety, and that the Ministry should be required to pay Ingalls' attorneys' fees and costs. (Wood Decl., Ex. 1.)

70152828_7

concluding that a balance of factors "supports an immediate confirmation"); *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d at 71–73 (reaching the same conclusion); *G.E. Transp. S.P.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 137–39 (D.D.C. 2010) (same).

37.     For the foregoing reasons, Petitioner is entitled to an order confirming the Award pursuant to 9 U.S.C. §§ 9, 207, and 302, and Articles 4 and 5 of the Panama Convention.

### Count II: Recognition and Enforcement of the Award

38.     The foregoing paragraphs are incorporated as though fully restated herein.

39.     In the event this Court concludes that Washington, DC is not the legal seat of arbitration, this Court should nevertheless recognize and enforce the Award under the Panama Convention for the same reasons set forth above under Count I. As demonstrated above, *supra* ¶¶ 30–32, no predicate exists for non-recognition or non-enforcement of the Award. The Award is a binding decision that was issued by a properly constituted Tribunal, pursuant to a valid arbitration agreement. The Award pertains to commercial dealings between the Parties under the Contract that are appropriately resolved by arbitration. The Award is not subject to annulment or vacatur in any other jurisdiction. The Award's enforcement would not violate public policy.

40.     Because Brazil has also ratified the Panama Convention, the Petitioner is entitled to such an order even if the Court determines that the seat of the arbitration is Rio de Janeiro, rather than Washington, D.C. 9 U.S.C. §§ 9, 207, 302, and 304.

41.     The Petitioner is therefore entitled to an order recognizing and enforcing the Award pursuant to 9 U.S.C. §§ 9, 207, and 302, and Articles 4 and 5 of the Panama Convention.

**WHEREFORE**, Petitioner respectfully requests that the Court enter an Order:

> (a)     confirming, or in the alternative, recognizing and enforcing the Award against the Ministry;

70152828_7

      (b)     directing that judgment be entered confirming the Award; and

      (c)     granting such other and further relief as may be just and proper.

A proposed order is provided.

Dated: February 27, 2018           Respectfully submitted,
        Washington, D.C.

/s/ John F. Wood
John M. Townsend (Bar No. 422674)
John F. Wood (Bar No. 463562)
Michael A. DeBernardis (Bar No. 989876)
Tabitha Bartholomew (Bar No. 1044448)
HUGHES HUBBARD & REED LLP
1775 I Street, NW
Washington, D.C. 20006
Tel: (202) 721-4600
Fax: (202) 721-4646
john.wood@hugheshubbard.com
john.townsend@hugheshubbard.com
michael.debernardis@hugheshubbard.com
tabitha.bartholomew@hugheshubbard.com

70152828_7

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be filed the foregoing Petition and all accompanying documents with the Clerk of the Court using the Court's CM/ECF system on February 27, 2018. All participants who are registered CM/ECF users will be served by the CM/ECF system. I further certify that because the Respondent is not a registered CM/ECF user and is a foreign entity, I will cause the foregoing Petition and all accompanying documents to be served in accordance with the requirements of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention").

/s/ Tabitha Bartholomew

70152828_7