# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HUNTINGTON INGALLS<br>INCORPORATED,<br><br>Petitioner,<br><br>v.<br><br>MINISTRY OF DEFENSE OF THE<br>BOLIVARIAN REPUBLIC OF<br>VENEZUELA,<br><br>Respondent. | No. 1:18-cv-0469 (KBJ) |

## MEMORANDUM OPINION

Petitioner Huntington Ingalls Incorporated has filed a petition asking this Court

to recognize and enforce an arbitration award that an arbitral tribunal issued on

February 19, 2018, in Huntington Ingalls's favor. (*See* Pet., ECF No. 1, ¶¶ 22–23; *see*

*also* Pet'r's Opp'n to Resp.'s Mot. to Dismiss ("Pet'r's Opp'n"), ECF No. 22, at 8

(explaining that Huntington Ingalls seeks "recognition and enforcement of" an

arbitration award).)[1]  But the undisputed genesis of the arbitration award at issue is a

lawsuit that a predecessor in interest to Huntington Ingalls instituted in the United

States District Court for the Southern District of Mississippi in 2002.  (*See* Pet. ¶ 10 &

n.3.)  And in 2010, when the Southern District of Mississippi compelled the arbitration

proceedings that eventually gave rise to the instant enforcement action, that court

specifically confirmed its intention to "retain jurisdiction in order to bring this matter to

---

[1] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

conclusion after arbitration." *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venez.*, No. 1:02cv785, 2010 WL 5058645, at *5 (S.D. Miss. Dec. 4, 2010); (*see also* Pet. ¶¶ 16–20).

Given this case history, the undersigned issued an Order to Show Cause why Huntington Ingalls's petition for enforcement should not be transferred to the Southern District of Mississippi or dismissed.  (Order to Show Cause Why This Matter Should Not Be Transferred or Dismissed ("Order to Show Cause"), ECF No. 25.)  In its response to that Order—which is before this Court at present—Huntington Ingalls vigorously maintains that the United States District Court for the District of Columbia should inject itself into a long-running legal dispute that is still pending in the Southern District of Mississippi, by granting Huntington Ingalls's enforcement petition and turning the arbitration award (which, again, resulted from arbitration proceedings that the Mississippi district judge initiated) into a judgment of *this* Court.  (*See* Pet'r's Resp. to Order to Show Cause ("Pet'r's Resp."), ECF No. 27, at 5.)

As explained fully below, Huntington Ingalls provides no good cause for this Court to be the tribunal that recognizes and enforces the arbitration award at issue, and the undersigned cannot fathom any reason for exercising this Court's enforcement authority at the final stage of a matter that is plainly pending for resolution elsewhere. Therefore, Huntington Ingalls's (misplaced) enforcement petition will be **DENIED** without prejudice, and the instant case will be **DISMISSED**.  A separate order consistent with this Memorandum Opinion will follow.

## I.  BACKGROUND

### A.  The Origins Of The Instant Dispute

The original lawsuit from which the instant enforcement matter derives was filed 17 years ago.  According to Huntington Ingalls's petition, on December 17, 1997, Ingalls Shipbuilding, Incorporated, entered into a contract with Respondent Ministry of Defense of the Bolivarian Republic of Venezuela ("the Ministry"), the object of which was "to refurbish two LUPO-class missile-armed frigates in the Venezuelan Navy[.]" (Pet. ¶ 5.)  The contract was worth $315 million, with an allowance for additional compensation for "absolutely necessary" work.  (*Id.* ¶¶ 5, 6.)  The contract also contained an arbitration clause, which explained that "[s]hould the parties fail to resolve [a dispute] within thirty (30) days of the emergence of the dispute, then at the request of either party the matter shall be submitted for arbitration[.]"  (*Id.* ¶ 8.)  The arbitration clause further provided that "any arbitration . . . shall take place in Caracas, Venezuela."  (*Id.* (alteration omitted).)

A dispute subsequently arose, and on April 5, 2002, Northrup Grumman Ship Systems, Inc. ("Northrup")—Ingalls Shipbuilding's successor in interest and Huntington Ingalls's predecessor in interest—requested arbitration pursuant to the contract.  (*See id.* ¶ 9.)  Then, in October of 2002, Northrup filed a lawsuit in the United States District Court for the Southern District of Mississippi seeking an order to compel arbitration.  (*See id.* ¶ 10); *see also Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venez.*, No. 1:02cv785 (S.D. Miss. Oct. 24, 2002).

The following year, on April 16, 2003, the Mississippi federal court entered an order compelling arbitration and finding that, "although . . . the Contract provides for arbitration in Venezuela, the Court finds that the forum-selection clause should not be

enforced because the violently unstable political situation in Venezuela has rendered that country an unsuitable forum at this time." *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venez.*, No. 1:02cv785, 2003 WL 27383249, at *1 (S.D. Miss. Apr. 16, 2003). That court proceeded to order that "[t]he arbitration shall take place in Pascagoula, Mississippi, or such other place inside the United States chosen by The Ministry[,]" and "[i]f The Ministry prefers a location outside the United States, The Ministry may move this Court for good cause shown to consider such a request." *Id.* at *2. Notably, in this order compelling arbitration, the Mississippi federal court plainly stated that the court "will retain jurisdiction . . . to resolve disputes relating to this Order and to enforce any arbitral award[,]" *id.* at *1; furthermore, that court specifically noted that it would "retain jurisdiction to enforce this Order . . . and to enforce the decision and award rendered by the arbitrators[,]" *id.* at *2.

According to Huntington Ingalls's petition, the arbitration was set to take place in Mexico City (*see* Pet. ¶ 10), but the Ministry filed a motion to vacate the Mississippi federal court's arbitration order, after which that court stayed the arbitration pending its consideration of the Ministry's motion (*see id.* ¶ 11). In September of 2005, a lawyer for the Ministry allegedly transmitted a settlement offer to Northrup, which was accepted. (*See id.* ¶ 12.) However, the Ministry later contested the settlement (*see id.*), and the Mississippi district judge upheld the settlement (*see id.*); *see also Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venez.*, No. 1:02cv785, 2007 WL 2783343, at *6 (S.D. Miss. Sept. 24, 2007). The Ministry appealed the district court's decision to the U.S. Court of Appeals for the Fifth Circuit (*see* Pet. ¶ 12); meanwhile, because the arbitration proceedings had been stayed for so long, in

November of 2008, the arbitral tribunal responsible for the Mexico City arbitration terminated the arbitration. (*See id.* ¶ 13.)

In July of 2009, the Fifth Circuit vacated the district court's judgment enforcing the settlement, and also ruled that the termination of the arbitration mooted the district court's original order compelling arbitration. (*See id.* ¶ 14); *see also Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venez.*, 575 F.3d 491, 502 (5th Cir. 2009). The court of appeals then remanded the case to the district court to determine whether to compel arbitration once more. *See Northrop Grumman*, 575 F3d at 503.

On remand, each party moved to compel arbitration in its desired forum: the Ministry sought to enforce the contract's arbitration clause and arbitrate in Venezuela, while Northrup sought to compel arbitration in Mississippi. (*See* Pet. ¶ 15.) On December 4, 2010, the Mississippi federal court issued an order compelling arbitration, but finding that "enforcing the forum selection clause would be unreasonable, and that an alternative forum for the arbitration should be found by the parties." *Northrop Grumman*, 2010 WL 5058645, at *4. The court ordered that if the parties failed to agree on a location for the arbitration, "the Court will select the location and so notify the parties." *Id.* at *5. Notably, and significantly for present purposes, when the Mississippi federal court issued its order compelling arbitration once again, it also reaffirmed that it would "retain jurisdiction in order to bring this matter to conclusion after arbitration." *Id.* The Ministry appealed the district court's order compelling arbitration, but the Fifth Circuit dismissed the appeal for lack of jurisdiction. (*See* Pet. ¶ 16); *see also Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of*

*Venez.*, No. 11-60001 (5th Cir. Mar. 23, 2011) (per curiam).

In March of 2011, the parties notified the Mississippi federal court that they had selected Washington, D.C., as the location for the arbitration. (*See* Pet. ¶ 17.) But when the arbitral tribunal convened in Washington, D.C., the Ministry raised numerous objections, including asserting that, per the arbitration agreement, the arbitration proceedings had to take place in Venezuela. (*See id.* ¶ 18.) The tribunal rejected the Ministry's arguments, but determined "that it had the authority to choose where the proceedings outside of Venezuela would be conducted." (*Id.* ¶ 20.) The tribunal then selected Rio de Janeiro, Brazil, as the location for the arbitration. (*See id.*)

Thus, the long-awaited and twice-compelled arbitration proceedings took place in Brazil, between January 12 and January 18 of 2015. (*See id.* ¶ 22.) On February 19, 2018, the tribunal issued an award of $128,862,457.27 in favor of Huntington Ingalls. (*See id.* ¶¶ 22, 23(vi).)

**B.    Procedural History**

On February 27, 2018, Huntington Ingalls filed a petition in this Court, seeking to have the United States District Court for the District of Columbia recognize and enforce the arbitration award. (*See* Pet.) The Ministry filed a motion to dismiss the petition on July 13, 2018 (*see* Def.'s Mot. to Dismiss the Pet., ECF No. 21), and this Court held a hearing on the motion on February 13, 2019 (*see* Min. Entry of Feb. 13, 2019). At that hearing, this Court asked the parties about the propriety of two federal district courts exercising jurisdiction over the same arbitration proceedings at the same time. (*See, e.g.*, Hr'g Tr., ECF No. 26, at 3:13–24.) Along these same lines, on February 15, 2019, the Court issued an Order to Show Cause, requiring Huntington Ingalls to explain:

(1) why the petition that [Huntington Ingalls] has filed in this Court does not pertain to the arbitration award over which the Southern District of Mississippi has already asserted jurisdiction, or, if the Southern District of Mississippi has in fact retained jurisdiction to recognize and enforce the arbitration award that is the subject of the instant petition, (2) why the instant petition should not be transferred to the Southern District of Mississippi or dismissed.

(Order to Show Cause at 4 (citing 28 U.S.C. § 1404(a); *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)).) Huntington Ingalls responded to the Court's Order on February 28, 2019 (*see* ECF No. 27), and the Ministry responded to Huntington Ingalls's filing on March 14, 2019 (*see* ECF No. 28).

In its response to the Court's Order to Show Cause, Huntington Ingalls first asserts that "the 2010 Mississippi order cited in the Order to Show Cause relates only to collection on the resulting judgment (sometimes referred to as 'execution') *after* this Court confirms the Award." (Pet'r's Resp. at 5 (emphasis in original).) Huntington Ingalls argues that "[t]here is accordingly no overlap between the Mississippi Court's jurisdiction and that which [Huntington Ingalls] asks this Court to exercise." (*Id.*) And in this regard, Huntington Ingalls insists that the Mississippi federal court's 2010 order, which is "the only Mississippi Court order still in effect[,]" concerns "the restraint of certain Venezuelan funds that were held by a third party (the Bank of New York []) to facilitate collection of amounts owed under the award in the event it were to be reduced to a judgment elsewhere[]." (*Id.* at 9.) Additionally, Huntington Ingalls asserts that "the case was closed" in 2014, and that the Bank of New York was later dismissed as a party. (*Id.*) Thus, according to Huntington Ingalls, "the last vestige of the case in Mississippi pertains to a technical dispute for unpaid legal fees between Venezuela and its former counsel[.]" (*Id.*) Finally, Huntington Ingalls argues that the Mississippi

federal court has implicitly acquiesced to this Court's exercise of jurisdiction over the petition, because the parties have notified the Mississippi federal court of the proceedings before this Court, and the Mississippi federal court has not objected. (*See id.* at 12.)

The Ministry responds that Huntington Ingalls has misstated the facts, and that this Court should either deny recognition of the arbitration award or dismiss the case for lack of jurisdiction. (*See* Def.'s Resp. to Pet'r's Resp. ("Def.'s Resp."), ECF No. 28, at 4.) It asserts that Huntington Ingalls reads language into the Mississippi federal court's 2010 order, and that had that court intended to limit its jurisdiction only to "ensure that the funds in [Bank of New York's] possession would be used in a manner consistent with a future award[,]" it could have done so. (*Id.* at 9 (quoting Pet'r's Resp. at 11).) The Ministry further argues that the Mississippi federal court's administrative closure of the case before it "has no legal effect" because there has been no final judgment or dismissal of the case, and the language of the order closing the case actually supports the conclusion that the court retained jurisdiction to enforce the arbitration award. (*Id.* at 10; *see also id.* (noting that the court instructed the parties that they may re-open proceedings "to file and enforce the arbiter's order, or for other reasons" (quoting Order Closing Case, *Northrop Grumman*, 1:02cv785 (ECF No. 264))).) Finally, the Ministry points out that Huntington Ingalls cites no legal support for its contention that the Mississippi federal court has acquiesced to this Court's jurisdiction by remaining silent in the face of status reports notifying that court of the proceedings here. (*See id.*)

## II.    LEGAL STANDARDS

### A.    Recognition And Enforcement Of International Arbitral Awards

"[T]he United States has ratified and codified two Conventions that allow courts in one country to enforce arbitral awards rendered in other signatory countries[,]" *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 933 (D.C. Cir. 2007) (internal quotation marks and citation omitted):  the first is the Convention on the Recognition and Enforcement of Arbitral Awards (the "New York Convention"), and the second is the Inter-American Convention on International Commercial Arbitration (the "Panama Convention").[2]  These two conventions are substantively similar, *see DRC, Inc. v. Republic of Hond.*, 999 F. Supp. 2d 1, 4 (D.D.C. 2012), but the Panama Convention applies to the circumstances of the instant case.  *See* 9 U.S.C. § 305 (establishing the applicability of the Panama Convention where "a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the [Panama] Convention and are member States of the Organization of American States").

Under the Panama Convention, "any party to the arbitration may apply to any court having jurisdiction . . . for an order confirming the award as against any other party to the arbitration[,]" and "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207; *see also* 9 U.S.C. § 302 (applying section 207 in the Panama Convention context).  The Restatement of the U.S. Law of International Commercial Arbitration defines "[c]onfirmation" as "a determination that

---

[2] The Panama Convention is codified within the Federal Arbitration Act at 9 U.S.C. §§ 301–307, and the New York Convention is codified at 9 U.S.C. §§ 201–208.

reduces to judgment a Convention award made in the United States." Restatement (Third) of the U.S. Law of Int'l Comm. Arb. § 1-1(g) (Tent. Draft No. 2, Apr. 16, 2012). "Enforcement" is similarly defined as "the reduction to a judgment of an international arbitral award, other than a Convention award made in the United States." *Id.* § 1-1(l). Thus, the terms "confirm" and "enforce" mean essentially the same thing in the arbitration-award context, and differ only with respect to whether the arbitral award that the party seeks to have reduced to a judgment of the court was made inside the United States or abroad. The term "[r]ecognition" is defined as "a determination by a court or other tribunal that an international arbitral award is presumptively entitled to preclusive effect with respect to one or more matters determined therein." *Id.* § 1-1(z).

Notably, neither enforcement nor recognition of an international arbitral award equates to the *execution* of a court's judgment concerning an award that has been so recognized and enforced. "Execution" is "the granting of relief provided in a judgment through measures ordered by or under the auspices of a court." *Id.* § 1-1(m); *see also Execute*, Black's Law Dictionary 689 (10th ed. 2014) ("To enforce and collect on (a money judgment)"). Notably, while "[e]xecution normally issues from the court rendering the judgment[,]" the service of "a writ of execution and similar process" is limited to "the state in which the district court is held"; therefore, "there is a statutory procedure by which a money judgment of one federal court can be registered with a federal court in a different state or district, and then enforced as if it were a judgment of the second court." 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3013 (3d ed. 1998); *see also* Fed. R. Civ. P. 4.1(a) (instructing that "[p]rocess . . . may be served anywhere within the territorial limits of the state where

the district court is located"); 28 U.S.C. § 1963 ("A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.").  Accordingly, if any federal district court recognizes and enforces an international arbitral award—*i.e.*, determines its preclusive effect and reduces the award to a judgment of the court—and if that court then issues a writ of execution (or otherwise directs the recovery of assets) with respect to its judgment, *see* Fed. R. Civ. P. 69(a)(1), the prevailing party is free to seek recovery of assets from the losing party from any district within the United States in which the losing party has assets.

**B.     A Court's Discretion To Refrain From Exercising Duplicative Jurisdiction**

"[T]hough no precise rule has evolved," no less an authority than the Supreme Court of the United States has long held that "[a]s between federal district courts . . . the general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citations omitted). Thus, if a judgment has already been rendered in another court concerning a particular matter, successive litigation on the same claims or issues is precluded, and the second-in-time court *must* dismiss the precluded case or claims.  *See New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001).  However, the Supreme Court has made clear that when a similar case or claims are merely *pending* in another federal court, the second-in-time tribunal "generally[has] discretion to decide whether to dismiss [its] suit[.]" *Elgin v. Dep't of Treasury*, 567 U.S. 1, 14 (2012).

Courts in this circuit and elsewhere routinely exercise their discretion to dismiss, or transfer, cases in order to avoid duplicative litigation under circumstances in which more than one court has jurisdiction over the same matter. *See, e.g.*, *Stone & Webster, Inc. v. Ga. Power Co.*, 965 F. Supp. 2d 56, 61, 63, 66–67 (D.D.C. 2013) (dismissing case where "mirror-image" lawsuit had been filed in Georgia federal court and where "other than the fact that the parties submitted to the non-exclusive jurisdiction of this Court, the District of Columbia has no material ties to the present dispute"); *Silvious v. Ungar's Food Prods. Inc.*, No. 10-0639, 2010 WL 3324747, at *1–2 (D.D.C. Aug. 24, 2010) (dismissing case without prejudice where substantially similar claims were proceeding in a class action lawsuit in another federal district court); *Rogers v. Pitt*, 535 F. Supp. 2d 29, 32–33 (D.D.C. 2008) (dismissing case where duplicative case in Northern District of Texas was pending entry of final judgment).

III.    ANALYSIS

Huntington Ingalls has petitioned the instant Court to "recognize and enforce" (*i.e.*, reduce to a judgment) an international arbitration award that indisputably arises from litigation proceedings that were initiated in the Southern District of Mississippi nearly two decades ago. (*See* Pet. at 1; *see also id.* ¶¶ 10, 16.) For the reasons explained below, this Court concludes that the Mississippi federal court has expressly retained jurisdiction over this long-lived legal dispute; moreover, Huntington Ingalls has provided no reason for the instant tribunal to invoke its own jurisdiction to bring the arbitration proceedings to conclusion when another competent federal court has already claimed that authority. Consequently, this Court will exercise its discretion not to assert jurisdiction over a petition that plainly should have been filed in the court that

compelled the arbitration proceedings at issue and specifically retained jurisdiction over this matter.

### A.    The United States District Court For The Southern District Of Mississippi Retained Jurisdiction Over This Matter

Huntington Ingalls vigorously maintains that, in its 2010 order, the Mississippi federal court merely retained jurisdiction over the *execution* of any arbitration award that resulted from the proceedings it was initiating, as distinguished from the *confirmation* (*i.e.*, enforcement) of any such award. Indeed, to hear Huntington Ingalls tell it, after eight years of litigation, a trip to the Fifth Circuit, and two separate orders to compel arbitration, the Mississippi federal court was content to stand by after the much-anticipated arbitration award finally issued and permit enforcement of that award to occur in another federal district court. (*See* Pet'r's Resp. at 11 (arguing that "the Mississippi Court did not assert jurisdiction to reduce the Award, now to be rendered at an arbitral seat outside the district, into a U.S. court judgment").) To support this contention, Huntington Ingalls breezily suggests that the express statements in the Mississippi federal court's order relating to jurisdiction (which say no such thing) "may appear ambiguous at first." (*Id.*) But this Court discerns no ambiguity: given what the order plainly says, and in light of the procedural history( which provides the context in which the order was issued), there is *nothing* unclear about the Mississippi federal court's intention to retain jurisdiction over the results of the arbitration proceedings that it was initiating.

To begin with, in its order, the Mississippi federal court unequivocally states that, although it was compelling arbitration proceedings that would take place elsewhere, it was "retain[ing] jurisdiction in order to bring this matter to conclusion

after arbitration." *Northrop Grumman*, 2010 WL 5058645, at *5. To be sure, that court *also* stated that it "will retain jurisdiction over this matter as the [Bank of New York] is an interested party which will not participate in the arbitration proceeding[,]" as Huntington Ingalls points out. *Id.*; (*see also* Pet'r's Resp. at 11). But any ambiguity regarding the scope of the court's intentions is of Huntington Ingalls's own making, because the order does *not* state that the court's retention of jurisdiction pertained *only* to "a collection of a U.S. judgment against assets[,]" as Huntington Ingalls insists, or that the *only* purpose of the court's retention of jurisdiction was "to ensure that the funds in [Bank of New York's] possession would be used in a manner consistent with a future award, after that award became a judgment[,]" as Huntington Ingalls maintains. (Pet'r's Resp. at 11.) To the contrary, the Mississippi federal court plainly expressed its intention to retain jurisdiction over all of the steps that remained, as necessary "to bring this matter to conclusion after arbitration." *Northrop Grumman*, 2010 WL 5058645, at *5.

It is also important to recognize that, truth be told, Huntington Ingalls's parsimonious reading of the jurisdictional statements in the Mississippi federal court's order makes little sense. During eight years of litigation, that court had issued two detailed orders compelling arbitration after resolving tricky legal issues regarding the location and scope of the international arbitration proceedings, so *why* would that court then proceed to retain jurisdiction only for the purpose of *executing* the final arbitration award but not for the purpose of *enforcing* it? Huntington Ingalls's suggestion that this is precisely what the Mississippi federal court intended is especially odd when one considers that, ordinarily, the same court that reduces an arbitration award to judgment

14

is the tribunal that issues the writ of execution with respect to that award.  (*See* Sec. II.A, *supra*.)  And because the execution of an arbitration award ordinarily involves little more in terms of the exertion of court power than receipt of a certified copy of the judgment, *see* Wright & Miller, *Federal Practice and Procedure* § 3013; 28 U.S.C. § 1963, Huntington Ingalls's view that the Mississippi federal court intended to reserve for itself the power to do only that becomes even less likely.  In other words, this Court easily concludes that Huntington Ingalls's contention that the Mississippi federal court took great care to preserve for itself only the pro forma power to "execute" the judgment of another court pertaining to the arbitration award, while relinquishing the preceding and arguably more significant power to "enforce" the arbitration award (*see* Pet'r's Resp. at 11), is both speculative and spurious, as it finds no support in either the language of that court's order or the logical underpinnings of the applicable law.[3]

The context in which the Southern District of Mississippi issued the 2010 order further supports the conclusion that that court retained unrestricted jurisdiction,

---

[3] Huntington Ingalls repeatedly suggests that this Court is confused about the relief that Huntington Ingalls is seeking. (*See, e.g.*, Hr'g Tr. at 14:14–19, 22:12–23:13; Pet'r's Resp. at 7 ("Huntington Ingalls regrets that in seeking to avoid one ambiguity (the appearance of the word 'confirmation' in both Chapters one and two of the [Federal Arbitration Act]), it may have inadvertently created uncertainty as to the nature of the relief it seeks from this Court."); *id.* at 8 ("The difference in wording is potentially confusing, but the relief to which a petitioner is entitled pursuant to Sections 302 and 207 of the [Federal Arbitration Act] is the *same*: the reduction of an award to a judgment." (emphasis in original)); *id.* ("Finally, and for the avoidance of doubt, Huntington Ingalls is not currently seeking 'execution' in the sense used in the Order to Show Cause[.]"); *see also id.* at 5 ("[a]lthough the law in this regard is well-established, the word usage can be messy and confusing").)  Huntington Ingalls's purported concern about the Court's comprehension is not well founded, for it is crystal clear that Huntington Ingalls wants *this* Court to reduce the arbitration award into a judgment of the U.S. District Court of the District of Columbia (*i.e.*, to "enforce" the award) and in so asking, Huntington Ingalls implicitly invites this Court to ignore the Mississippi federal court's retention of jurisdiction to bring the matter to conclusion after the arbitration it ordered.  For the reasons discussed in this Memorandum Opinion, this Court finds Huntington Ingalls's insistence that a proper understanding of all of the relevant terms and issues leads inexorably to the conclusion that the Mississippi federal court merely retained jurisdiction to "execute" the judgment of some other federal district court utterly implausible.  In other words, given the actual facts and applicable law, this Court not only understands but also squarely rejects this reading of the Mississippi federal court's order.

including the power to recognize and enforce the arbitration award. It is undisputed that the 2010 order was the order that compelled the arbitration proceedings that resulted in the current award, *see Northrop Grumman*, 2010 WL 5058645, at *5, and it was the Mississippi federal district court that instructed the parties that the arbitration could not take place in Venezuela and that the parties would have to select a "mutually agreeable alternative forum as the location for the arbitration proceedings[,]" *id.* at *4. The Mississippi federal court then ordered the parties to confer and determine where arbitration would take place, *see id.*; and as it turns out, the propriety of the location of the arbitration *is one of the central disputes* before the instant Court with respect to the current enforcement request (*see* Def.'s Mot. to Dismiss at 18–25; Pet'r's Opp'n at 20–26).

Moreover, and somewhat ironically, it was Huntington Ingalls's predecessor in interest that had asked the Mississippi federal court to retain jurisdiction despite ordering the arbitration to be conducted elsewhere; indeed, Northrop Grumman apparently filed a motion in which it argued that the Mississippi federal court "should retain jurisdiction over the matter" in order to "mak[e] the Court available to adjudicate disputes *and to confirm the arbitration award when issued*." *Northrop Grumman*, 2010 WL 5058645, at *2 (emphasis added). And it was *that very motion*—which, again, sought retention of jurisdiction "to confirm the arbitration award when issued[,]" *id.*—that the Mississippi federal court granted when it stated, in 2010, that it was retaining jurisdiction. It is entirely inconceivable that the Mississippi federal court somehow intended to grant the motion before it silently and implicitly limited its jurisdiction to mere execution of the arbitration award, as Huntington Ingalls now suggests.

16

And nothing else about the conduct of the Mississippi federal court supports the conclusion that it did not intend to retain jurisdiction in order to reduce the arbitral award to a judgment of that court. For example, when the Mississippi federal court closed its case "for statistical purposes[,]" it explained that "[n]othing contained in this Order shall be considered a dismissal or disposition of this matter[,]" and that "[s]hould further proceedings become *necessary or desirable*, any party may request that the case be reopened *to file and enforce the arbiter's order*, or for other reasons." Order Closing Case, *Northrop Grumman*, 1:02cv785 (emphasis added). Huntington Ingalls interprets these statements as the Mississippi federal court's washing its hands of this entire dispute—*i.e.*, "le[aving] it to the parties to decide whether they wished to involve [the Mississippi federal court] in any future matters pertaining to an Award *at all*" (Pet'r's Resp. at 12 (emphasis in original))—but it is clear to this Court that the Mississippi federal court was merely clarifying its intention to close the case *only* for administrative purposes and to leave it open for the purpose of bringing the ordered arbitration proceedings to a close, consistent with the court's 2010 order, *see* Order Closing Case, *Northrop Grumman*, 1:02cv785 ("Any party may initiate . . . proceedings in the same manner as if this Order had not been entered.").

Furthermore, the simple fact that the parties have received no response from the Southern District of Mississippi with respect to the status reports that notified that court of the instant certification petition (*see* Pet'r's Resp. at 12) does not give rise to a reasonable conclusion that the Mississippi federal court has somehow relinquished its jurisdiction despite its clearly expressed intention to "retain jurisdiction" over this matter. Huntington Ingalls cites no authority for the proposition that if a court remains

silent when notified in a status report about potentially unauthorized conduct by the parties (here, claim-splitting), it somehow acquiesces to that conduct.

In short, the Mississippi federal court's language and actions clearly demonstrate that that court intended to retain jurisdiction over the post-arbitration proceedings, including enforcement of the arbitration award that Huntington Ingalls now seeks to have confirmed in the District of the District of Columbia, and this is especially evident given the context of the lengthy dispute between the parties, which, up until Huntington Ingalls filed the instant enforcement petition, had been handled exclusively by the Southern District of Mississippi. Thus, Huntington Ingalls's attempt to clarify that its own intention is not to seek *execution* of a judgment in this Court, but instead is only seeking to reduce the arbitration award to a judgment (*i.e.*, *enforcement*) misses the mark (*see* Pet'r's Resp. at 6–8), and if anything, establishes that it is Huntington Ingalls, not this Court, that confuses the relevant legal principles (*see* Hr'g Tr. at 14:14–19, 22:12–23:13; *see also* n.3, *supra*). This Court understands fully what Hunting Ingalls is requesting, and it concludes—as it must—that another federal court has retained jurisdiction to grant the relief Huntington Ingalls now seeks.

### B.  This Court Will Exercise Its Discretion To Dismiss This Case

Having determined that another federal district court has already exercised jurisdiction over the matter that Huntington Ingalls has filed in this Court, the Court now turns to Huntington Ingalls's contention that, even if the Southern District of Mississippi retained jurisdiction to confirm the arbitration award at issue in this case, this Court has no option but to "honor *Petitioner's choice* to seek the confirmation of the Award in this Court[.]" (Pet'r's Resp. at 6 (emphasis in original).) In this regard, Huntington Ingalls blithely characterizes this Court's concerns about exercising its

18

authority with respect to a matter that is already pending for resolution in another federal district court as a worry that is merely "based on convenience, comity, or similar prudential considerations" (*id.*), but such cavalier hand-waving brushes off legitimate and long-standing jurisdictional principles that warrant pause, and careful consideration.

As explained above, the Supreme Court of the United States has specifically determined that "a tribunal generally has discretion to decide whether to dismiss a suit when a similar suit is pending elsewhere." *Elgin*, 567 U.S. at 14. That observation should have prompted Huntington Ingalls to appeal to this Court's discretionary judgment, say, by providing *reasons* why the Court *should* exercise jurisdiction over its petition despite the Mississippi federal court's order. Instead, Huntington Ingalls points to the Federal Arbitration Act's ("FAA") venue provisions to suggest that this Court has no choice but to allow its petition to proceed. (*See* Pet'r's Resp. at 15 (citing 9 U.S.C. §§ 204, 302); *see also* n.2, *supra* (explaining that Panama Convention is codified within FAA).) To be specific, Huntington Ingalls argues that, because the FAA states that "[a]n action or proceeding over which the district courts have jurisdiction . . . may be brought in *any* such court in which . . . an action or proceeding with respect to the controversy between the parties could be brought," 9 U.S.C. § 204 (emphasis added), this Court *must* entertain its confirmation petition in this district. But much like the petition itself, Huntington Ingalls's reliance on section 204 is woefully misplaced.

This Court makes no finding that the U.S. District Court for the District of Columbia is an improper venue for Huntington Ingalls's petition under the cited statutory provisions, and it might well be that a party to an arbitration has

"confirmation choices" (Pet.'s Resp. at 15) under that statute. What is at issue here is whether Huntington Ingalls's predecessor in interest *has already exercised that choice*, by bringing its suit to compel arbitration in the Southern District of Mississippi and specifically asking that court to retain jurisdiction to confirm any subsequent arbitration award. As detailed above, the Mississippi federal court obliged, and the FAA says nothing about whether *another* federal district court can *subsequently* decline to confirm the award that arises from those arbitration proceedings.

Put another way, the FAA plainly permits an international arbitration award winner to choose the federal district court in which the award will be confirmed ("enforced") *in the absence* of any prior and pending assertion of jurisdiction over those same arbitration proceedings by another federal district court. Thus, while Huntington Ingalls rightly maintains that a party to an international arbitration proceeding, by statute, "may apply to *any* court having jurisdiction . . . for an order confirming the award" (Pet'r's Resp. at 6 (second emphasis omitted) (quoting 9 U.S.C. § 207)), what matters here is whether the FAA, the Panama Convention, or any other law demands that a federal court confirm an award that has resulted from an international arbitration that another federal court previously compelled and with respect to which that first court has expressly retained jurisdiction. And *that* scenario implicates other established limitations on the exercise of federal-court power—*i.e.*, the well-worn principles of judicial comity that have long motivated second-in-time federal courts to stand down in similar circumstances. *See, e.g.*, *Elgin*, 567 U.S. at 14; *Colorado River Water Conservation Dist.*, 424 U.S. at 817 (1976).

Thus, although Huntington Ingalls requests this Court's imprimatur with respect

to the arbitration award at issue, it is clear to this Court that the Southern District of Mississippi has already taken up that mantle, and Huntington Ingalls points to no law that requires the duplicative litigation it proposes. The Mississippi federal court has exercised jurisdiction over the parties' arbitration; has specifically noted its intent to be the court that "bring[s] this matter to a conclusion after the arbitration[,]" *Northrop Grumman*, 2010 WL 5058645, at *5; and has held its case open presumably for that very purpose. *See generally* Dkt., *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venez.*, No. 1:02-cv-00785 (S.D. Miss.) (revealing that no final judgment has been rendered in the case); *see also* Order Closing Case, *Northrop Grumman*, 1:02cv785 (closing the case "for statistical purposes" and noting that "[n]othing contained in this Order shall be considered a dismissal or disposition of this matter"). Thus, whether or not this Court *may* exercise jurisdiction over this matter, or otherwise *must* exercise jurisdiction when an international arbitration award winner properly files petition to recognize and enforce an arbitration award, under the circumstances presented here, this Court appropriately can—and will—decline to proceed.

## IV.    CONCLUSION

Huntington Ingalls's earnest interest in having *this* Court be the tribunal that reduces its arbitration award to a judgment is apparent in its written response to this Court's Order to Show Cause, as well as the oral argument that Huntington Ingalls's counsel presented with respect to this issue. Had it not been for the (presumably tactical) decision that Huntington Ingalls's predecessor in interest made to ask the Southern District of Mississippi to compel the underlying arbitration proceedings and to retain jurisdiction over the matter once the arbitration was concluded, Huntington

Ingalls's instant confirmation request might well have been properly entertained in this Court. But what is done, is done: the Mississippi federal court adjudicated the arbitration dispute that gave rise to the award at issue here, and not only did that court compel the ensuing international arbitration proceedings, it also expressly and specifically "retain[ed] jurisdiction in order to bring this matter to conclusion after arbitration." *Northrop Grumman*, 2010 WL 5058645, at *5.

Thus, when boiled to bare essence, the confirmation request that Huntington Ingalls brings to this Court today involves more than the mere recognition and enforcement of a favorable international arbitration award. Huntington Ingalls is also effectively asking this Court to step into a matter that is currently pending in another federal district court and to issue a judgment that the other court is not only competent to issue, but has also expressly reserved to itself the power to render. And Huntington Ingalls has provided neither the statutory authority nor the cause for this Court to exert its jurisdiction in this fashion. Consequently, in the exercise of this Court's sound discretion and upon careful deliberation, Huntington Ingalls's petition to recognize and enforce the arbitration award will be **DENIED**, and the instant case will be **DISMISSED**.[4]

DATE: June 13, 2019
*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[4] The Court's Order to Show Cause suggested its willingness to transfer the pending petition to the Southern District of Mississippi, rather than dismissing the case altogether. (*See* Order to Show Cause at 1.) However, Huntington Ingalls has made no request to transfer, even in the alternative. (*See* Pet'r's Resp. at 18 (asserting that because venue is proper in this Court and the instant certification request "does not overlap with proceedings" before the Mississippi federal court, "this matter should neither be transferred nor dismissed").